# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

ESTATE OF TARA O'LEARY, deceased, by EILEEN DEVLIN and MAUREEN BALLAND-APPANEAL, Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary; ESTATE OF LYDIA JOY PERRY, deceased, by VIVIAN KALE and JANET FANDEL, Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry,

                Plaintiffs,

vs.

DEBRA SLOAN, individually, and as agent, servant, and/or employee of the State Defendants and/or The ARC of Hunterdon County; STATE OF NEW JERSEY; DEPARTMENT OF HUMAN SERVICES-DIVISION OF DEVELOPMENTAL DISABILITIES; BRIDGET GRIMES, individually, and as agent, servant, and/or employee of the State Defendants; JENNIFER VELEZ, individually, and in her capacity as the Commissioner of the State  Department of Human Services; MARION FENWICK, individually, and as agent, servant, and/or employee of the State Defendants; MARGE BRIEGEL, individually, and as agent, servant, and/or employee of the State Defendants and/or the ARC of Hunterdon County; KENNETH RITCHLEY, individually, and as agent, servant, and/or employee of the State Defendants and/or the ARC of Hunterdon County; ROBERT HARBOLD, individually, and as agent, servant, and/or employee of the State Defendants and/or the ARC of Hunterdon County; GERI MOHR, individually, and as agent, servant, and/or employee of the State Defendants and/or the ARC of Hunterdon County; THE ARC OF HUNTERDON COUNTY; JOHN & JANE DOES 1 – 50 (said names fictitious, real names unknown), individually, and as policymakers, management, supervisors, agents, servants, and/or employees of the State Defendants, The ARC of Hunterdon County, or of the ABC CORPS. 1 – 10 (said names fictitious, real names unknown),

                Defendants.

CASE NO.:

Civil Action

**COMPLAINT
AND JURY DEMAND**

---

Plaintiffs, the Estate of Tara O'Leary, by Eileen Devlin, Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary, residing at 30 Laurie Lane, Little Silver, New Jersey, and Maureen Balland-Appaneal, Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary, residing at 41 White Street, North Middletown, New Jersey, The Estate of Lydia Joy Perry, by Vivian Kale, Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy

Perry, residing at 3126 Alton Avenue, Allentown, Pennsylvania, and Janet Fandel, Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, residing at 134 Upper Kingtown Road, Pittstown, New Jersey, by way of this Complaint against the Defendants, say:

<u>**INTRODUCTION**</u>

1.       This is an action to remedy Federal and State civil rights violations and tortious conduct committed by the State Defendants and their policymakers, management, supervisors, employees, agents, and representatives, against the Decedents Tara O'Leary, Lydia Joy Perry, and other disabled individuals, who were placed in their care, custody, and control.  Specifically, those disabled individuals placed in the care and control of the Division of Developmental Disabilities ("DDD") of the Department of Human Services ("DHS").

Essentially, Decedents Tara O'Leary, Lydia Joy Perry, and the other individuals placed, by the State Defendants, in the Community Care Residence maintained by Defendant Debra Sloan, as well as in the custody and care of the ARC of Hunterdon County, were systematically abused, neglected, and tortured.  The State Defendants failed to adequately monitor Decedents Tara O'Leary and Lydia Joy Perry's safety and well-being or provide for their basic needs and treatment while in the State Defendants' care.  (Attached hereto as **Exhibit A** are two news articles detailing and confirming the abuse and neglect.)

2.       This case involves claims against the State Defendants for placing Decedents Tara O'Leary and Lydia Joy Perry, in a residence wherein they were subjected to abuse and neglect and were otherwise treated unfairly, unjustly, and unlawfully.  In addition to common law violations, Ms. Perry's and Ms. O'Leary's rights under the United States Constitution, the New Jersey State Constitution, and various federal and state statutes, including but not limited to, the U.S. Civil Rights Act (42 U.S.C. §1983), the New Jersey Civil Rights Act, the Americans with Disabilities Act, the New Jersey Law Against Discrimination, and the Developmentally Disabled Rights Act were violated.

2

## JURISDICTION AND VENUE

3.      Jurisdiction and venue in this action pursuant to 28 U.S.C. §1331, 28 U.S.C.

§1332 and by 28 U.S.C. §1343.  The jurisdictional amount of this complaint exceeds $75,000.00,

and all Defendants are citizens of a state different from that of one of the primary Plaintiffs,

Vivian Kale, who is a citizen of the State of Pennsylvania.  This Court properly exercises

diversity jurisdiction over this matter.  More importantly, this lawsuit presents significant federal

questions of law involving the U.S. Constitution and protections of the ADA.

4.      Plaintiffs' venue is proper in this District, pursuant to 28 U.S.C. §1391(b)

because many of the primary Defendants (i.e., the State of New Jersey, DHS-DDD and Bridget

Grimes) resided and conducted their operations and activities in this District and, thus, a

substantial part of the events giving rise to this claim occurred in this District.

## RELIEF SOUGHT

5.      This action seeks money damages, punitive and exemplary damages, attorney's

fees, costs, and injunctive/remedial relief.

## PARTIES

6.      Decedent/Plaintiff, Tara O'Leary was a physically and mentally disabled

individual residing in the State of New Jersey.  Tara O'Leary was born on July 24, 1980.  At

birth, she was developmentally disabled.  In 2005, Ms. O'Leary was placed in the custody of the

State Defendants. At all relevant times, and, upon information and belief, since 2005, the

Decedent/Plaintiff, Tara O'Leary, was under the supervision and care of the State Defendants.

7.      Decedent/Plaintiff, Lydia Joy Perry was a physically and mentally disabled

individual residing in the State of New Jersey.  Lydia Joy Perry was born on March 18, 1941.  At

birth, she was developmentally disabled.  Her mother died in 1972 and her father died in 1991.

In 1985, after her father had become ill, Ms. Perry was placed in the custody of the State

Defendants. At all relevant times, and, upon information and belief, since 1985, the

Decedent/Plaintiff, Lydia Joy Perry, was under the supervision and care of the State Defendants.

      8.     Defendant, the STATE OF NEW JERSEY, established and organized under the

laws and Constitution of New Jersey, has a principal place of business located at 25 Market

Street, Trenton, New Jersey 08625-0116.

      9.     Defendant, DEPARTMENT OF HUMAN SERVICES-DIVISION OF

DEVELOPMENTAL DISABILITIES, is a principal Department of the Executive Branch of

State government, located at 222 South Warren Street, Trenton, New Jersey 08625.   The

DIVISION OF DEVELOPMENTAL DISABILITIES ("DDD") is the agency within the DHS

established by the State of New Jersey to, in pertinent part:

    (a)     provide necessary services to protect disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry, who are placed into Community Care Residences;

    (b)     provide proper care to disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry, who are placed in State custody, care, and supervision;

    (c)     ensure the safety and well-being of disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry, who are placed in State custody, care, and supervision; and

    (d)     protect such disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry, who are placed in State custody, care, and supervision from neglect, abuse, harassment and other maltreatment.

      10.     Defendant, THE ARC OF HUNTERDON COUNTY, (hereinafter referred to as

the "ARC") is organized under the laws of New Jersey, with a principal place of business located

at 1322 State Route 31 North, Suite 5, Annandale, New Jersey 08801.   The ARC, during the

pertinent time period, had a contractual relationship with the State Defendants to provide

services, care for, and supervise Tara O'Leary and Lydia Joy Perry.  Defendant operated certain "Day Programs", which included Tara O'Leary, Lydia Joy Perry, and one other resident (Erin Germaine) of the Sloan Community Care Residence, as clients/participants.

Defendant, THE ARC OF HUNTERDON COUNTY, was contracted by the State of New Jersey and paid, upon information and belief, with both State and Federal funds, to provide services to Tara O'Leary, Lydia Joy Perry, and one other young female resident at Defendant Debra Sloan's Community Care Residence - - Erin Germaine.  The ARC of Hunterdon County, through its employees, agents, and representatives knew or should have known of the systematic abuse, neglect and mistreatment of Tara O'Leary, Lydia Joy Perry, and Erin Germaine.  The ARC of Hunterdon County received significant funding despite the fact that, at least in the case of Tara O'Leary and Erin Germaine, those women were consistently not attending the Day Program required as part of their Individual Habilitation Plan ("IHP").  The persistent "no-shows" of Tara O'Leary and Erin Germaine, with no explanation and no justification, should have alerted the ARC of Hunterdon County that something was very wrong at the Debra Sloan Community Care Residence and this Defendant should have taken steps to correct the situation.

11.    Defendant, DEBRA SLOAN (a/k/a Debra Conklin), individually, and as agent, servant, and/or employee of the State Defendants and/or The ARC of Hunterdon County, who, at all relevant times, and upon information and belief, was a resident of the State of New Jersey, located at 31 Schaaf Road, Bloomsbury, in Hunterdon County, at which location she operated a "Community Care Residence".

12.    Defendant, BRIDGET GRIMES, individually, and as agent, servant, and/or employee of the State Defendants, at all relevant times, and upon information and belief, was a resident of the State of New Jersey and worked as a Habilitation Planning Coordinator for DDD. At all relevant times, Defendant Bridget Grimes was the DDD assigned Case Manager for Decedents Tara O'Leary and Lydia Joy Perry, including the entire time of Ms. Perry's and Ms.

O'Leary's residency with Defendant Debra Sloan.

13.     Defendant, DHS Commissioner JENNIFER VELEZ, individually, and as representative, agent, servant, and/or employee of the State Defendants, at all relevant times, and upon information and belief, was the Commissioner of DHS-DDD.  Her primary place of business was out of Trenton, New Jersey.

14.     Defendant MARION FENWICK, individually, and as agent, servant, and/or employee of the State Defendants, at all relevant times, and upon information and belief, was the Direct Supervisor of Defendant Bridget Grimes.  Her primary place of business was out of Trenton, New Jersey.

15.     Defendant MARGE BRIEGEL, individually, and as agent, servant, and/or employee of the State Defendants, at all relevant times, and upon information and belief, was the Regional Office Administrator for the State Defendants.  She directly supervised Defendants Fenwick and Grimes.   Her primary place of business was out of Trenton, New Jersey.

16.     Defendant KENNETH RITCHLEY, individually, and as agent, servant, and/or employee of the State Defendants and/or the ARC, at all relevant times, and upon information and belief, was the Assistant Commissioner for the DDD.  His primary place of business was out of Trenton, New Jersey.

17.     Defendant ROBERT HARBOLD, individually, and as agent, servant, and/or employee of the State Defendants and/or the ARC, at all relevant times, and upon information and belief, was the Regional Administrator for the DDD.  His primary place of business was out of Trenton, New Jersey.

18.     Defendant GERI MOHR, individually, and as agent, servant, and/or employee of the State Defendants and/or the ARC, at all relevant times, and upon information and belief, was the Social Worker assigned to take care of Tara O'Leary.  Her primary place of business was out of Trenton, New Jersey.

19.     Defendants, DEBRA SLOAN, STATE OF NEW JERSEY, DHS-DDD, BRIDGET GRIMES, MARGE BRIEGEL, KENNETH RITCHLEY, ROBERT HARBOLD, GERI MOHR, JENNIFER VELEZ, and MARION FENWICK, hereinafter are referred to as the "State Defendants".  The State Defendants failed to protect Decedents Tara O'Leary and Lydia Joy Perry, as well as other similarly situated disabled individuals in their care, custody, and control, as a result of negligent, reckless, and deliberate actions and omissions at all levels of DHS-DDD.  As a result, Decedents Tara O'Leary and Lydia Joy Perry suffered grievous harm and permanent physical, emotional, developmental, psychological and psychiatric injuries.

20.     Plaintiffs recognize and acknowledge that some of the State Defendants (in particular, the State, DHS-DDD, and Commissioner Velez in her official capacity) are protected by the Eleventh Amendment.  Nevertheless, Plaintiffs can and do assert direct Federal Constitutional claims against the other State Defendants.

Consistent with the Court Opinion and Order dated May 31, 2011, in the original underlying action entitled Estate of Lydia Joy Perry v. Sloan, et als, Case No. 10-cv-4646 (AET), Plaintiffs recognize that the First, Second, Third, and Seventh Counts of this Complaint are only applicable to the individual State Defendants.  Those Counts (I, II, III, and VII) are not applicable to the following Defendants: The State of New Jersey; DHS-DDD; and all of the individual Defendants in their "official capacity".  Again, those Counts are applicable to all the individual State Defendants and other Defendants in their individual capacity.

21.     Defendants Managerial Does #1-20, held managerial positions within, or were policymakers for, DHS-DDD, with responsibilities to ensure adequate training and supervision of, and/or communication among DHS-DDD supervisory and caseworker staff responsible for the safety and well-being of the Decedents Tara O'Leary and Lydia Joy Perry, as well as other

similarly situated disabled individuals, who had been placed in the State Defendants' custody, control, and care. They are sued in their individual and official capacities. The Managerial Doe Defendants engaged in the following systematic misconduct:

a) failed to ensure that DHS-DDD staff were adequately trained and supervised to track and understand information relevant to the screening and approval of a Community Care Residence, such as Defendant Sloan's residence, in a matter that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

b) failed to ensure that DHS-DDD staff were adequately trained and supervised to screen and monitor Defendant Sloan's Community Care Residence, as well as other Community Care residences throughout the State, in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

c) failed to adequately supervise DHS-DDD staff, including Defendants Grimes and Sloan, in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

d) failed to ensure that DHS-DDD staff were adequately trained and supervised to conduct required regular face-to-face visits with Decedents Tara O'Leary and Lydia Joy Perry in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

e) failed to ensure that DHS-DDD staff were adequately trained to report and investigate suspected abuse and neglect in Defendant Sloan's Community Care Residence, as well as other Community Care Residences throughout the State, in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

f) failed to ensure that DHS-DDD staff reported and investigated suspected abuse and neglect in Defendant Sloan's Community Care Residence, as well as other Community Care Residences throughout the State, in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

g)    DHS-DDD staff, who had contact with Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals, failed to report and investigate suspected abuse and neglect in Defendant Sloan's Community Care Residence, as well as other Community Care Residences throughout the State, in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

h)    failed to ensure that DHS-DDD staff were adequately trained and supervised to track, understand, and protect the medical and mental health of Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

i)    failed to adequately supervise DHS-DDD staff responsible for tracking, understanding, and protecting the medical and mental health of Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated disabled individuals, in a manner that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals;

j)    failed to ensure that DHS-DDD staff were adequately trained and supervised to ensure the regular and necessary medical and mental health treatment of Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals; and

k)    failed to adequately supervise DHS-DDD staff responsible for the regular and necessary medical and mental health treatment of Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals, in a matter that was consistent with the exercise of reasonable professional judgment, and in deliberate indifference to the risk of harm to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals.

22.    Defendants Supervisory Does #20-30, held supervisory positions within DHS-DDD with responsibilities to supervise the casework staff responsible for the safety and well-being of the Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals placed in the State Defendants' custody, control, and care.  They are sued in their

individual and official capacities.

23.    Defendants Caseworker Does #30-40, held caseworker, investigator, and/or inspector positions within DHS-DDD with responsibilities for the safety and well-being of the Decedent/Plaintiff Lydia Joy Perry and other similarly situated disabled individuals placed in the State Defendants' custody, control, and care.  They are sued in their individual and official capacities.

24.    Defendants ARC Does #41-50, are employees, agents, representatives, managers, and/or supervisors, with responsibilities for the safety and well-being of the Decedent/Plaintiff Lydia Joy Perry and other similarly situated disabled individuals placed in the State Defendants' custody, control, and care.  They are sued in their individual and official capacities.

25.    Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary, and Vivian Kale and Janet Fandel as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, bring this Complaint pursuant to the Survivorship Act, as described by *N.J.S.A.* 2A:15- 3.

26.    Furthermore, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary, and Vivian Kale and Janet Fandel as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry do bring this action for all of the pecuniary losses suffered by the heirs and/or dependents of the Decedents, Lydia Joy Perry and Tara O'Leary, consistent with the remedies set forth in the Wrongful Death Act, *N.J.S.A.* 2A:31-1, *et seq*.

27.    Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary, and Vivian Kale and Janet Fandel as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry also seek remedies on behalf of the Estate of Tara O'Leary and the Estate of Lydia Joy Perry pursuant to other statutory and common law theories as set forth below.

## FACTUAL BACKGROUND COMMON TO ALL COUNTS

### A. Decedent/Plaintiff Tara O'Leary

28. In 2005, Tara O'Leary was placed in a Community Care Residence operated out of the home of Defendant Debra Sloan. That home was located at 31 Schaaf Road, Bloomsbury, in Hunterdon County, New Jersey. During the pertinent time period, Defendant Sloan also had other disabled individuals residing with her whom she had contracted with the State to care for. One was named Lydia Joy Perry and the other Erin Germaine.

29. During this time period, Defendant Bridget Grimes worked as a Habilitation Planning Coordinator for DHS-DDD. She was the assigned Case Manager for Tara O'Leary throughout the entire time of Ms. O'Leary's residency with Defendant Debra Sloan.

30. During her period of residency with Defendant Sloan, Decedent/Plaintiff Tara O'Leary was subjected to abuse and severe neglect, including starvation, which ultimately led to her tragic death, and was otherwise treated unfairly, unjustly, and unlawfully. In addition to common law violations, Ms. O'Leary's rights under the United States Constitution, the State Constitution, and various federal and state statutes, including but not limited to, the U.S. Civil Rights Act, the New Jersey Civil Rights Act, the Americans with Disabilities Act, the New Jersey Law Against Discrimination, and the Developmentally Disabled Rights Act, (which federally mandates that individuals with development disabilities be provided with services, support and other assistance "in a manner that demonstrates respect for individual dignity") were violated.

31. On or about October 30, 2009, a 17 count indictment was issued against both Defendant Bridget Grimes and Defendant Debra Sloan (a/k/a Debra Conklin) by the Hunterdon County Grand Jury for various alleged criminal offenses involving the three women in Ms. Sloan's care, including Decedents Tara O'Leary and Lydia Joy Perry, including, but not limited to, neglect and criminal restraint.

11

32.     Defendants failed to discover, observe, report or take reasonable steps with regard to the fact that Tara O'Leary was dramatically losing weight and losing mobility.  Tara O'Leary, as well as Erin Germaine, were being restrained, in their bedroom at Defendant Sloan's home, with a gate and a door which locked from the outside.

33.     Decedent/Plaintiff Tara O'Leary was allowed to crawl around on the floor of the bedroom on a carpet which reeked of urine.  For lengthy periods of time, Ms. O'Leary had multiple diapers duct taped to her body, which were left unchanged.

34.     When medical attention was finally provided to Ms. O'Leary, it was found that she was being starved - - weighing only 40 pounds.  She suffered from malnutrition, significant painful loss of mobility, and other causally related medical conditions.

35.     On or about September 23, 2008, Decedent/Plaintiff Tara O'Leary was admitted to Hunterdon Medical Center in Flemington, New Jersey, with a diagnosis of malnutrition, dehydration and possible pneumonia and septic shock.

36.     On November 10, 2008, as a result of Defendants' abuse and neglect, Decedent/Plaintiff Tara O'Leary tragically died.

37.     Decedent/Plaintiff Tara O'Leary received federal Medicaid dollars through the Community Care Waiver 1915 (c), New Jersey Community Resources for People with Disabilities.

38.     Upon information and belief, an individual is eligible to receive these funds only as long as one is engaged in "active treatment".  Active treatment is defined as aggressive and ongoing treatment to progress the client.  Defendants knew or reasonably should have known that Ms. O'Leary was not in "active treatment", that her IHPs were being consistently ignored, and that her physical and emotional functioning and well-being was drastically being damaged and stunted.

39.     The Defendants were in the practice of submitting for reimbursement without verifying whether or not the clients were in attendance at the required ARC Day Program.

40.     Further, funds that belonged to Tara O'Leary, consistent with N.J.A.C. 10:44B-1.6 (g), (Personal Needs Account), were essentially being stolen and/or misappropriated.  Items that clearly were not meant for Tara O'Leary were being purchased.  Items such as a jungle gym and size 12 clothing - - Ms. O'Leary was 40 pounds.  Defendants were responsible for approval.  Authorization of and review of these expenditures and for protection of Tara's financial resources.  Defendants failed to fulfill their duties in this regard.

41.     Over the years, Defendants directly interfered with visitation with and access to Tara O'Leary by her family.

### B.  Decedent/Plaintiff Lydia Joy Perry

42.     On July 22, 2006, Lydia Joy Perry was transferred to a Community Care Residence operated out of the home of Defendant Debra Sloan.  That home was located at 31 Schaaf Road, Bloomsbury, in Hunterdon County, New Jersey.  At this same time, Defendant Sloan also had two other disabled individuals residing with her whom she had contracted with the State to care for.  One was named Tara O'Leary and the other Erin Germaine.

43.     During this time period, Defendant Bridget Grimes worked as a Habilitation Planning Coordinator for DHS-DDD.  She was the assigned Case Manager for Lydia Joy Perry throughout the entire time of Ms. Perry's residency with Defendant Debra Sloan, including the initial transfer of Decedent to Ms. Sloan's home.  Defendant Grimes, initially, and throughout the residency, highly recommended Ms. Sloan.  Defendant Grimes took active and affirmative steps and actions to keep Lydia Joy Perry in Defendant Debra Sloan's home and persuaded family members, including both Vivian Kale and Janet Fandel, to keep Ms. Perry placed in Ms. Sloan's home.

44.     During her period of residency with Defendant Sloan, Decedent/Plaintiff Lydia

Joy Perry was subjected to abuse, neglect, harassment, and retaliation, and was otherwise treated unfairly, unjustly, and unlawfully.  In addition to common law violations, Ms. Perry's rights under the United States Constitution, the State Constitution, and various federal and state statutes, including but not limited to, the U.S. Civil Rights Act, the New Jersey Civil Rights Act, the Americans with Disabilities Act, the New Jersey Law Against Discrimination, and the Developmentally Disabled Rights Act, (which federally mandates that individuals with development disabilities be provided with services, support and other assistance "in a manner that demonstrates respect for individual dignity") were violated.

45.     On or about October 30, 2009, both Defendant Bridget Grimes and Defendant Debra Sloan (a/k/a Debra Conklin) were indicted by the Hunterdon County Grand Jury for various alleged criminal offenses involving the three women in Ms. Sloan's care, including Decedent/Plaintiff Lydia Joy Perry.  With respect to Lydia Joy Perry, Defendant Bridget Grimes was charged with official misconduct with regard to her role as Habilitation Planning Coordinator for the State's Division of Developmental Disabilities.  Further, Defendants Debra Sloan and Bridget Grimes were both indicted, with respect to Lydia Joy Perry, for the neglect of an elderly or disabled person.  Specifically, they were both charged with violating their legal duty to take care of Lydia Joy Perry by and through their unreasonable and/or negligent failure to take the necessary steps required for Ms. Perry's physical and mental well-being.

46.     The Grand Jury also concluded that Defendants Grimes and Sloan:

a)      Exploited Ms. Perry by placing her in the role of a caregiver to Tara O'Leary;

b)      Made threats against Ms. Perry;

c)      Failed to provide her with medical treatment in a timely fashion; and

d)      Denied Ms. Perry's family access to her home.

14

47.    In addition to the findings from the pending criminal proceedings, Plaintiffs contend that numerous other acts of misconduct were engaged in by the State Defendants, and, in particular, by Defendant Sloan.  During the pertinent time period, Decedent/Plaintiff Lydia Joy Perry was forced effectively into "servitude"; specifically, she was required to provide services to the other two women in Defendant Sloan's residence, despite the fact that she was unable to even care for herself.

48.    Decedent/Plaintiff Lydia Joy Perry, during her residency with Defendant Sloan, was subjected by the State Defendants, to mental torture and extreme emotional abuse.  In part, this abuse and emotional harm was the direct result of Decedent/Plaintiff Lydia Joy Perry having to witness and observe the torture and starvation being imposed on Tara O'Leary and Erin Germaine.  Ms. Perry was forced to listen to crying and moaning and otherwise exposed to a completely cruel environment as a result of the State Defendants' negligence, recklessness, and misconduct.  Further, any time Ms. Perry would raise or assert that she had certain rights as a disabled person, she would be retaliated against and threatened by Defendant Sloan.  In addition, the State Defendants failed to provide Ms. Perry with the reasonable and necessary medical care she required during this time period.

49.    On October 28, 2009, DHS-DDD substantiated that there was "neglect" of Decedent/Plaintiff Lydia Joy Perry by Defendant Debra Sloan.  Specifically, the State concluded that Defendant Sloan had failed to supply or provide Ms. Perry with medical care, specifically, a diagnostic procedure known as a colonoscopy for more than two years.   The State also substantiated the verbal abuse/psychological mistreatment of Ms. Perry by Defendant Sloan.  There is also evidence that Ms. Perry was discriminated against, mocked, made fun of and insulted, as a result of and because of her disability, by Defendant Sloan.  Further, there is evidence that Ms. Perry was exploited by Defendant Sloan.  The total amount of money unjustly taken by Defendant Sloan during Ms. Perry's residency at her home remains to be determined,

but it is clear that the amount is significant.  Notably, during the pertinent time period, Decedent/Plaintiff Lydia Joy Perry was obligated and did pay $700.00 per month for the services and care that were to be provided (but, which were not provided) by Defendant Sloan at her sponsor home.

50.     In November 2008, Decedent/Plaintiff Lydia Joy Perry's former roommate, Tara O'Leary, tragically died as a result of Defendant Sloan's abuse and neglect.

## 1.   The Neglect and Abuse Continued After Ms. Perry Was Removed From the Sloan Residence

51.     On September 11, 2008, Decedent/Plaintiff Lydia Joy Perry was transferred to a new Community Care Residence, owned and operated by Dorothy Purdy.  Upon information and belief, this transfer by the State took place because, during her residency with Defendant Sloan, under the direct oversight of Defendant Grimes and the other State Defendants, Ms. Perry and the other two residents, including Decedent Tara O'Leary, had been exposed to severe neglect, abuse, and other forms of misconduct causing them severe, permanent and life altering injuries.

52.     Even upon transfer to Dorothy Purdy's home, Ms. Perry continued to be neglected.  Specifically, Ms. Perry sustained significant injuries as a result of an accident occurring on Ms. Purdy's premises and as a result of neglect on the part of Nathan Carroll, who, upon information and belief, is Dorothy Purdy's grandson.  Indeed, on November 5, 2009, the State substantiated findings of neglect against Dorothy Purdy with regard to the treatment that was not provided to Ms. Perry for the time period of September 2008 through August 2009. Apparently, Dorothy Purdy was not a proper placement, was unable to provide the level of care and supervision Ms. Perry required, and otherwise acted negligently.

53.     On or about August 17, 2009, Lydia Joy Perry succumbed to her condition and died intestate.  Ms. Perry died as a result of a gastrointestinal hemorrhage.  Upon information and belief, but for the neglect and abuse, particularly the denial of reasonable and necessary

medical care that Ms. Perry required, while in the custody, care and control of the State Defendants and the ARC, and as a direct result of the negligence, neglect, and other misconduct of Defendant Grimes, Defendant Sloan, the other State Defendants, and the ARC, her medical condition would have been diagnosed and treated earlier and more effectively, and her suffering and death would have been prevented.

54. In the months and days that followed, Vivian Kale, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, learned and discovered that Lydia's condition was the direct and proximate result of the negligent, careless, and/or reckless care and supervision of the Decedent/Plaintiff Lydia Joy Perry by the aforementioned Defendants.

## C. **DEFENDANTS' MISCONDUCT**

55. The State Defendants and the ARC had been on notice for months and/or years that Defendant Sloan was not providing adequate care or services to the disabled individuals placed in her home, including, Decedents Tara O'Leary and Lydia Joy Perry and the other woman, Erin Germaine. The State Defendants and the ARC were also on notice that training, supervision, and communication at DHS-DDD and at the ARC was inadequate to protect disabled individuals, including Decedents from known risks of harm in inappropriate and abusive Community Care Residences. As detailed above and below, the State Defendants acted and failed to act in reckless disregard and total indifference to the desperate plight of Decedents and the other disabled individuals placed in Defendant Sloan's residence, in violation of their Federal and State constitutional rights, and contrary to the requirement and obligations imposed by numerous State and Federal statutory obligations.

56. The State Defendants failed to ensure that Decedents Tara O'Leary and Lydia Joy Perry had their basic needs met during the time they were in their care, custody, and control.

57.   The State Defendants failed to ensure that Decedents Tara O'Leary and Lydia Joy Perry received reasonable and adequate medical and mental health care while in State custody, and failed to properly monitor, supervise, and evaluated Defendant Sloan as a Community Care Residence caretaker, resulting in significant pain and suffering, injuries, emotional distress, and ultimately the death of Decedents Tara O'Leary and Lydia Joy Perry.

58.   The State Defendants also failed to report, investigate and protect Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals from ongoing maltreatment, abuse, neglect and torture in Defendant Sloan's home, and other Community Care Residences throughout the State.

59.   More than six months has passed since the occurrence of this death.  Plaintiffs have complied with the notice requirements of N.J.S.A. 59:1-1, *et seq*.

60.   Specifically, upon information and belief, the State Defendants knew, were aware of, and/or should have known, of the fact that Defendant Debra Sloan was and had been systematically abusing and neglecting the disabled individuals, including the Decedents Tara O'Leary and Lydia Joy Perry, who were placed in her custody and care.  Despite this actual or constructive knowledge, and despite their affirmative duty to protect these disabled individuals, including Decedents, the State Defendants:

> (a) permitted Tara O'Leary and Lydia Joy Perry to remain a resident at Defendant Debra Sloan's home;
>
> (b) aided, abetted, acquiesced in, and otherwise allowed Defendant Sloan to continue her abuse, neglect, and torture of the disabled individuals placed in her care, including Decedents;
>
> (c) failed to warn the family members, guardians, and other law enforcement or State Officials, of the fact that Defendant Sloan was no longer qualified and competent to take care of disabled individuals and was in the process of abusing, neglecting, and torturing same;
>
> (d) failed to supervise, control, and monitor Defendant Debra Sloan and otherwise failed to properly protect the disabled individuals placed in the care of Defendant Sloan;

18

(e) failed to supervise, control, and monitor Dorothy Purdy and otherwise failed to properly protect Lydia Joy Perry when she was placed in the care of Dorothy Purdy;

(f) failed to supervise, control, and monitor Nathan Carroll and otherwise failed to properly protect Lydia Joy Perry when she was placed in the care of Nathan Carroll;

(g) failed to take steps to prevent abuse, neglect, and torture and otherwise negligent and reckless behavior by Defendant Sloan against the disabled individuals placed in her care, including Decedents Tara O'Leary and Lydia Joy Perry;

(h) failed to ensure, confirm, and/or monitor that the services, paid for by the State and the disabled individuals and their families, were actually being provided by individuals operating Community Care Residences, including Defendant Sloan.  This includes significantly, Federal funds and taxpayer money which was designed and dedicated to provide certain services to Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals in the State Defendants' care; and

(i) otherwise failed to exercise due care under the circumstances.

61.    The State Defendants were entrusted with the care of, supervision of, and safekeeping of the disabled individuals placed in Community Care Residences throughout the State, including Decedents Tara O'Leary and Lydia Joy Perry.

62.    During the pertinent time period, the State Defendants acted under the color of law, acting intentionally and/or with deliberate indifference and/or gross negligence, in executing or failing to execute customs, practices, rules, procedures and/or policies, and otherwise engaged in acts or omissions such as to deprive Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated disabled individuals, of constitutional rights and privileges protected under the United States and New Jersey Constitutions, common law and statutory law.  Said acts or omissions include but are not limited to the following:

a)    failure to properly protect disabled individuals placed in their supervisory custody, control, and care;

19

b)    failure to properly monitor the physical health, welfare, and status of the disabled individuals placed within their supervisory custody, control, and care;

c)    failure to properly supervise both the disabled individuals and the caretakers, including Defendant Sloan, who was given charge of providing proper care and services to these disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry;

d)    failure to properly supervise Decedent/Plaintiff Lydia Joy Perry and the caretakers, including Defendant Sloan, Dorothy Purdy and Nathan Carroll, who were given charge of providing proper care and services to Lydia Joy Perry;

e)    failure to properly train employees, including training related to appropriate handling of disabled individuals, such as those like or similar to Decedents Tara O'Leary and Lydia Joy Perry;

f)    failure to establish a protocol or procedure for reporting and documentation of instances of and allegations of neglect, abuse, harassment and/or torture against disabled individuals;

g)    failure to properly investigate allegations of neglect, abuse, and torture of disabled individuals;

h)    failure to take appropriate measures in response to allegations of neglect, abuse and torture of disabled individuals; and

i)    failure to notify appropriate authorities of reports and/or allegations of neglect, abuse and torture of disabled individuals.

63.    Said actions and/or omissions constituted a willful disregard for the safety of Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals.

64.    The State Defendants were aware of and/or should reasonably have been aware of the abusive and neglectful propensities and pattern of abuse and neglect engaged in by Defendant Sloan, prior to and during the ongoing torture, abuse, and neglect of Tara O'Leary and Lydia Joy Perry and the other disabled individual placed in Defendant Sloan's care. Despite this notice and knowledge, the State Defendants allowed Tara O'Leary and Lydia Joy Perry to remain in the custody and care of Defendant Sloan at her Community Care Residence and took no other steps

to protect Tara O'Leary and Lydia Joy Perry and the other disabled individual from her abusive and neglectful behavior and propensities.

65.     The State Defendants made the situation far more dangerous for Tara O'Leary and Lydia Joy Perry and the other disabled individual, by essentially "covering up" and willfully ignoring evidence that there was serious abuse and neglect occurring in the home of Defendant Sloan.  For example, Tara O'Leary and Erin Germaine were literally being starved to death in the months leading up to Decedents Tara O'Leary and Lydia Joy Perry, and Erin Germaine, finally being removed from Defendant Sloan's home.

66.     The State Defendants allowed Tara O'Leary and Lydia Joy Perry to be abused, neglected, and essentially tortured while in their care, custody, and control.

67.     At all times relevant hereto, by operation of State and Federal law, the State Defendants had the constitutionally required, non-delegable duty and responsibility for Tara O'Leary's and Lydia Joy Perry's care, safety, protection, and supervision.

68.     The State Defendants are subject to the requirements of the United States Constitution, the New Jersey Constitution, the United States Civil Rights Act (42 U.S.C. §1983), the New Jersey Civil Rights Act, the Americans with Disabilities Act, the New Jersey Law Against Discrimination, and the Developmentally Disabled Rights Act.

69.     By reason of the unlawful and unconstitutional treatment of Tara O'Leary and Lydia Joy Perry, by the aforementioned State Defendants, Plaintiffs were required to and did employ legal counsel to ensure protection and redress for the deprivation of both Tara O'Leary's and Lydia Joy Perry's constitutional and civil rights.

70.     In addition, Plaintiffs contend that the acts and omissions of the State Defendants resulted in violations of the United States Constitution, which are actionable pursuant to the United States Civil Rights Act (Section 1983) and the New Jersey State Constitution and the laws of New Jersey.  The State Defendants' misconduct included, but is not limited to:

21

(a) breach of the State Defendants' affirmative duties and obligations owed to Decedent/Plaintiffs Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals placed in their care, custody and supervision;

(b) the failure to protect Decedent/Plaintiffs Tara O'Leary and Lydia Joy Perry from reasonably foreseeable harm;

(c) the unreasonable creation of and aggravation of a dangerous situation ("State Created Danger");

(d) unconstitutional policies, practices, and customs; and

(e) deliberate indifference to Decedent/Plaintiffs Tara O'Leary's and Lydia Joy Perry's safety and well-being.

71.     The State Defendants, including the individual Defendants, allowed Tara O'Leary and Lydia Joy Perry to be neglected, tortured, and abused, and failed in their obligations to (a) supervise and monitor Decedents Tara O'Leary's and Lydia Joy Perry's placement and (b) with respect to other affirmative obligations placed on this entity by both Federal and State law, considering its receipt/utilization of and reliance upon Federal funds.

72.     As a direct and proximate result of the negligence, carelessness, and/or recklessness of the aforementioned Defendants, including the ARC, the Decedents suffered physical and emotional injuries, considerable pain, anguish and suffering and permanent injuries, and conscious pain and suffering, all of which ultimately caused Decedents Tara O'Leary's and Lydia Joy Perry's death.

73.     By way of this action, Plaintiffs seek injunctive relief to protect current and future similarly situated disabled individuals at risk, to ensure that they receive reasonable and necessary care and services, and to assist family members of such disabled individuals, like they themselves were, in ensuring the protection of these individuals and ensuring that same received reasonable and necessary care and services.

**FIRST COUNT**
**(AS TO THE STATE DEFENDANTS)**

**42 U.S.C. §1983 – DEPRIVATION OF SUBSTANTIVE**
**DUE PROCESS RIGHTS: SPECIAL RELATIONSHIP**

74.     Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

75.     At all times when the State Defendants had Decedents Tara O'Leary and Lydia Joy Perry in their care, custody and control, the State Defendants had a "special relationship" with them which imposed upon the State Defendants an affirmative duty to care for and protect Decedents Tara O'Leary and Lydia Joy Perry from harm, provide them with certain basic services, under the Fourteenth Amendment to the United States Constitution.

76.     The State Defendants breached that duty.  The State Defendants' actions and omissions were a substantial departure from the exercise of reasonable professional judgment, practice, and standards, and amounted to deliberate indifference to Decedents' welfare.

77.     The State Defendants acted with deliberate indifference to and callous disregard of the repeated indications and signs that Decedents Tara O'Leary and Lydia Joy Perry, as well as one other female disabled individual in Defendant Sloan's home, were not receiving adequate care and services, and, in fact, were being abused, neglected, and mistreated, while in the State's care, custody, and control.

78.     The State Defendants failed to ensure the safety and well-being of Decedents Tara O'Leary and Lydia Joy Perry, as well as one other female disabled individual in Defendant Sloan's home, proximately causing them substantial and unnecessary physical, emotional, psychological, and psychiatric harm.

79.     The State Defendants' actions and inactions that resulted in this harm include, but are not limited to:

a) the failure to ensure that Decedents Tara O'Leary and Lydia Joy Perry, as well as one other female disabled individual in Defendant Sloan's home, received basic necessities while in the State Defendants' custody, care, and control;

b) the failure to ensure that Decedents Tara O'Leary and Lydia Joy Perry, as well as one other female disabled individual in Defendant Sloan's home, received adequate medical care, treatment, and services while in the State Defendants' custody, care and control;

c) the failure to adequately monitor Decedents Tara O'Leary and Lydia Joy Perry, as well as one other female disabled individual, in Defendant Sloan's home, safety and well-being while in the State Defendants' custody, care and control;

d) the failure to provide Decedents Tara O'Leary and Lydia Joy Perry, as well as one other female disabled individual in Defendant Sloan's home, with a safe and appropriate placement; and

e) the failure to adequately screen, evaluate, supervise, approve, license, and monitor Defendant Sloan, as a Community Care Residence Caretaker.

80.    The State Defendants were aware for years of the inadequate training and other systematic deficiencies in the State's Community Care Residence system.  These systematic deficiencies directly contributed to the harm suffered by Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals.  The State Defendants failed to take reasonable steps to remedy these deficiencies.

81.    The State Defendants' failure to adequately supervise, monitor, control, and adequately train employees, agents, and representatives of the DHS-DDD was so obviously likely to result in constitutional violations, and cause serious harm to those placed in the State Defendants' custody, care, and control, including, Decedents Tara O'Leary and Lydia Joy Perry, that it amounted to deliberate indifference to their welfare and the welfare of other similarly situated disabled individuals.

82.    The State Defendants failed to ensure that DHS-DDD' policies and procedures were interpreted, implemented and enforced in a consistent constitutional manner.

24

83.     The State Defendants were deliberately indifferent to Decedents Lydia Joy Perry's and Tara O'Leary's welfare by failing to take action that was obviously necessary to prevent or stop the deprivation of their constitutional rights and to prevent the ongoing abuse, neglect and torture of Decedents Tara O'Leary and Lydia Joy Perry and the other female disabled individual in Defendant Sloan's home.

84.     By virtue of the foregoing, the State Defendants deprived Decedents Tara O'Leary and Lydia Joy Perry of various rights protected by the Due Process Clause of the Fourteenth Amendment, including, but not limited to:

> (a) the right to personal security and reasonably safe living conditions;
>
> (b) the right to protection from harm;
>
> (c) the right not to be harmed physically, emotionally, or otherwise;
>
> (d) the right to basic life necessities;
>
> (e) the right not to deteriorate in State custody and care;
>
> (f) her due process right to minimal habilitation and care; and
>
> (g) the right to adequate medical care, treatment, and services consistent with the exercise of reasonable professional judgment.

85.     The State Defendants arbitrarily and capriciously deprived Decedents Tara O'Leary and Lydia Joy Perry of their Due Process rights in the absence of any countervailing State interest.

86.     Decedents Tara O'Leary's and Lydia Joy Perry's Substantive Due Process rights were clearly established constitutional rights at the time of the State Defendants' acts and omissions, and a reasonable individual would have known that their acts and omissions would violate these clearly established constitutional rights.

87.     At all times relevant hereto, the State Defendants acted under color of state law and were responsible for protecting those disabled individuals placed in their care, including

Tara O'Leary and Lydia Joy Perry, and had an affirmative duty to those disabled individuals.

88.     The State Defendants knew, or should have known, the substantial risk of harm to Lydia Joy Perry and Tara O'Leary by placing them with Defendant Debra Sloan, given that they were fully aware, knew, or reasonably should have known, of Defendant Sloan's history of abuse of disabled individuals in her home, including the ongoing abuse/neglect and starvation of the other disabled woman (Erin Germaine) who was residing with Tara O'Leary and Lydia Joy Perry during the pertinent time period.

89.     The State Defendants breached their affirmative duties to Lydia Joy Perry and Tara O'Leary and violated their Substantive Due Process rights by placing Lydia Joy Perry and Tara O'Leary with Defendant Sloan, and, thereafter, by failing to adequately supervise and monitor that placement and by not removing Ms. Perry and Ms. O'Leary from Defendant Sloan's home when they became or should have become aware of the risk to their personal safety, the neglect of their medical needs, and the general abuse and torture of Ms. O'Leary and Ms. Perry and the other individual in Defendant Sloan's home.

90.     As a result of the actions or inactions of the State Defendants, who at all times were acting under color of State law, Decedents Tara O'Leary and Lydia Joy Perry were deprived of their constitutional rights under the Fourteenth Amendment of the United States Constitution in violation of 42 U.S.C. §1983 and damaged thereby.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

**SECOND COUNT**
**42 U.S.C. §1983- SUBSTANTIVE DUE PROCESS:**
**STATE CREATED DANGER**

100.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

101.    The Fourteenth Amendment to the United States Constitution guarantees Decedents Tara O'Leary and Lydia Joy Perry the Substantive Due Process right to be free from "state-created dangers".

102.    The State Defendants violated this right by taking affirmative steps to:

(a)   approve Defendant Sloan as a Community Care Residence Caretaker;

(b) by approving the placement of Decedents Tara O'Leary and Lydia Joy Perry in Defendant Sloan's home, which placed them and one other disabled individual at imminent and foreseeable risk of danger and harm;

(c) by affirmatively persuading Decedents and their families to keep Decedents Tara O'Leary and Lydia Joy Perry at Defendant Sloan's Community Care Residence, and  home; and

(d) through other affirmative acts and conduct.

103.    Decedents Lydia Joy Perry's and Tara O'Leary's Substantive Due Process rights to be free from state-created dangers were clearly established constitutional rights at the time of the State Defendants' acts and omissions, and a reasonable individual would have known that their acts and omissions would violate these clearly established constitutional rights.

104.    Prior to the deaths of Lydia Joy Perry and Tara O'Leary, the State Defendants, under the color of law, acted intentionally and/or with deliberate indifference, in executing or failing to execute customs, practices, rules, procedures and/or policies, and otherwise engaged in acts or omissions such as to deprive Decedents Tara O'Leary and Lydia Joy Perry of their constitutional rights and privileges protected under the United States Constitution.  The acts committed against the Decedents Tara O'Leary and Lydia Joy Perry, constitute a violation of

their rights pursuant to the United States Constitution.

105.    Specifically, as set forth above, the State Defendants were aware, or should have been aware of the abusive and neglectful behavior and propensities, as well as prior pattern of abuse and neglect by Defendant Sloan.  As a result of said prior behavior of Defendant Sloan, the State Defendants knew that there was an obvious and constant threat to disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry and one other disabled individual in Defendant Sloan's home.  Despite this notice and knowledge, the State Defendants allowed Defendant Sloan to continue to be paid by the State to provide services in her home to disabled individuals, including, Lydia Joy Perry and Tara O'Leary, and took no steps to protect those disabled individuals placed in her care, including Decedents Tara O'Leary and Lydia Joy Perry, from her abusive, neglectful, and torturous behavior during the pertinent time period.

106.    Again, Plaintiffs specifically contend that the acts and omissions of the State Defendants resulted in the unreasonable creation of and aggravation of a dangerous situation ("State Created Danger").

107.    The State Defendants are liable for establishing and maintaining, with deliberate indifference to the consequences of said acts/omissions, a policy, practice, and/or custom of failing to take action with respect to complaints of abuse and neglect by Defendant Sloan, as well as obvious warning signs of ongoing abuse and neglect in Defendant Sloan's home, which directly and proximately caused Decedents Lydia Joy Perry's and Tara O'Leary's constitutional harm in violation of 42 U.S.C. § 1983.

108.    As a direct and proximate result of the negligence, carelessness, and/or recklessness of the State Defendants, the Decedents Tara O'Leary and Lydia Joy Perry, suffered physical and emotional injuries, considerable pain, anguish and suffering and permanent injuries, and conscious pain and suffering, ultimately causing their death.

28

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

**THIRD COUNT**
**42 U.S.C. § 1983 – DELIBERATE INDIFFERENCE - -**
**Unconstitutional Policies/Practices/Customs and Procedural Due Process**

109.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

110.    The State Defendants are liable for establishing and maintaining, with deliberate indifference to the consequences of said acts/omissions, unconstitutional policies, practices, and/or customs, which resulted in the harm and misconduct described above.   These unconstitutional policies, practices, and customs included the State Defendants' systematic failure to take action with respect to (a) the neglect and abuse of Tara O'Leary and Lydia Joy Perry by Defendant Sloan, as well as the neglect and abuse of other similarly situated disabled individuals throughout the State; (b) the supervision and safety of similarly situated disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry, in the State Defendants' care and custody; and/or (c) the training of the State Defendants' staff with respect to each of these duties and obligations, which directly and proximately caused Decedents Lydia Joy Perry's and Tara O'Leary's constitutional harm and injuries in violation of 42 U.S.C. § 1983.

111.    The neglect, abuse, and torture of Lydia Joy Perry was a direct and proximate result of the State Defendants' deliberate indifference.   In addition to the detailed allegations above, such deliberate indifference consisted of:

(a)     failing to provide regular and continuous observation and supervision and/or control of Lydia Joy Perry's activities;

(b)     failing to provide regular and continuous observation and supervision and/or control of Defendant Sloan's activities;

(c)     placing Decedent/Plaintiff Lydia Joy Perry in a Community Care Residence with individuals, including Defendant Sloan, the State Defendants knew or should have known were abusive and neglectful;

(d)     failing to properly supervise, handle, and control abusive and neglectful caregivers, including specifically, Defendant Sloan; and

(e)     failing to properly protect Decedent/Plaintiff Lydia Joy Perry.

112.    The neglect, abuse, and starvation of Tara O'Leary was a direct and proximate result of the State Defendants' deliberate indifference.  In addition to the detailed allegations above, such deliberate indifference consisted of:

a.   failing to provide regular and continuous observation and supervision and/or control of Tara O'Leary's activities;

b.   failing to provide regular and continuous observation and supervision and/or control of Defendant Sloan's activities;

c.   placing Decedent/Plaintiff Tara O'Leary in a Community Care Residence with individuals, including Defendant Sloan, the State Defendants knew or should have known were abusive and neglectful;

d.   failing to properly supervise, handle, and control abusive and neglectful caregivers, including specifically, Defendant Sloan; and

e.   failing to properly protect Decedent/Plaintiff Tara O'Leary.

113.    By reason of the unlawful and unconstitutional treatment of Lydia Joy Perry and Tara O'Leary, by the State Defendants, Plaintiffs were required to and did employ legal counsel to ensure protection and redress for the deprivation of Lydia Joy Perry's and Tara O'Leary's constitutional and civil rights.

114.    Plaintiffs/Decedents Tara O'Leary and Lydia Joy Perry had certain property rights, with regard to the funds she supplied ($700.00 per month) to Defendant Sloan.  Since, to a

large extent, these funds were stolen (i.e., "taken") as a result of Defendants' misconduct, their procedural due process rights were violated.

115.    As a direct and proximate cause of the State Defendants' creation, acquiescence in and aggravation of a dangerous situation, Decedents Tara O'Leary and Lydia Joy Perry sustained a loss of Constitutional Rights and Privileges, including but not limited to the right to be free from intrusions into their personal privacy and bodily integrity.

116.    As a direct and proximate result of the negligence and/or misconduct of the State Defendants, Decedents Tara O'Leary and Lydia Joy Perry, suffered physical and emotional injuries, considerable pain, anguish and suffering and permanent injuries, and conscious pain and suffering, ultimately causing her death.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

## FOURTH COUNT
## NEGLIGENCE

117.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

118.    During their residency with Defendant Sloan, Decedents Tara O'Leary and Lydia Joy Perry were directly harmed as a result of Defendant Sloan's negligence and/or gross negligence.  As more fully described above, Lydia Joy Perry also certainly suffered as a direct result of Defendant Sloan's neglect and mistreatment of Tara O'Leary and Erin Germaine.

119.     The State Defendants owed numerous duties to Decedents Tara O'Leary and Lydia Joy Perry.  The State Defendants had a duty to train their employees, agents, and representatives to ensure that any suspected abuse and neglect be recognized, reported, and investigated as legally required.  The State Defendants had a duty to supervise their staff, caseworkers, and outside agents and representatives to assure that they that they recognize, report and investigate any suspected abuse and neglect.

120.     The State Defendants had a general duty to ensure that Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated disabled individuals, received adequate care and services.

121.     The State Defendants also had a duty to screen, approve, license and monitor the Community Care Residences that Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated disabled individuals, were placed in, including Defendant Sloan's home.

122.     The State Defendants had a duty to take reasonable steps to investigate suspected abuse and neglect and remove Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated disabled individuals, from abusive and neglectful homes.

123.     The harm and injuries that Decedents Tara O'Leary and Lydia Joy Perry experienced were caused by the negligence of the State Defendants, their agents, servants, and employees, in creating the aforesaid condition, allowing the aforesaid conditions to exist, and/or failing to take reasonable steps to prevent or correct the aforesaid conditions.  The State Defendants failed to take reasonable steps to prevent the abuse, neglect, and torture Decedents experienced at the hands of Defendant Sloan.

124.     During the pertinent time period, in particular, the years and months leading up to the death of Decedents Tara O'Leary and Lydia Joy Perry, the State Defendants acted negligently and/or grossly negligently.  Said acts or omissions include but are not limited to the following:

(a)     failure to properly protect disabled individuals placed in their supervisory custody, control, and care;

(b)     failure to properly monitor the physical health, welfare, and status of the disabled individuals placed within their supervisory custody, control, and care;

(c)     failure to properly supervise both the disabled individuals and the caretakers, including Defendant Sloan, who was given charge of providing proper care and services to these disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry;

(d)     failure to properly train employees, including training related to (i) appropriate handling of disabled individuals, such as those like or similar to Decedents Tara O'Leary and Lydia Joy Perry; and (ii) those agents/employees having previously engaged in neglect, abuse, and torture within a Community Care Residence;

(e)     failure to establish a protocol for reporting and documentation of instances of and allegations of neglect, abuse, and torture against disabled individuals;

(f)     failure to properly investigate allegations of neglect, abuse, and torture of disabled individuals;

(g)     failure to take appropriate measures in response to allegations of neglect, abuse and torture of disabled individuals; and

(h)     failure to notify appropriate authorities of reports and/or allegations of neglect, abuse and torture of disabled individuals.

The State Defendants' actions and omissions constituted a "continuing tort" during this time period (since their placement with Defendant Sloan).

125.    The State Defendants were entrusted by law with the care of, supervision of, and safekeeping of Decedents Tara O'Leary and Lydia Joy Perry.

126.    The State Defendants were obligated to ensure that services were conducted in a reasonably safe manner and that disabled individuals were protected, supervised, and monitored as they were in their care, custody and supervision.  The State Defendants had an obligation to ensure that the Individual Defendants fulfilled their obligations with respect to providing services

to and protecting the safety of disabled individuals and for otherwise protecting, supervising, and monitoring disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry.

127.   The negligence and carelessness of the State Defendants included, in particular, their failure to ensure the safety of Decedents Tara O'Leary and Lydia Joy Perry and their failure to protect them from abuse, neglect, and torture.

128.   The negligence of the Individual Defendants, as aforesaid, is imputed to each of the named State Defendants by virtue of vicarious liability and the doctrine of Respondeat Superior.

129.   As a direct and proximate result of the negligence and/or misconduct of the State Defendants, Decedents Tara O'Leary and Lydia Joy Perry suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, and a diminished enjoyment of life.  She also died as a direct and proximate result of this abuse and neglect.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

## FIFTH COUNT
## WRONGFUL DEATH AND SURVIVAL ACT

130.   Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

131.    As a direct and proximate result of the negligence of all of the Defendants, Decedent Lydia Joy Perry was caused to suffer severe personal injuries, emotional distress, mental anguish, conscious pain and suffering, all of which resulted in her death.

132.    As a direct and proximate result of the negligence of all of the Defendants, Decedent Tara O'Leary was caused to suffer severe personal injuries, including starvation, emotional distress, mental anguish, conscious pain and suffering, all of which resulted in her death.

133.    As a direct and proximate result of the negligence, wrongful acts/omissions and misconduct described above, surviving members of the Estate of Lydia Joy Perry sustained pecuniary losses and/or damages, including funeral expenses and other economic damages.

134.    As a direct and proximate result of the negligence, wrongful acts/omissions and misconduct described above, surviving members of the Estate of Tara O'Leary sustained pecuniary losses and/or damages, including funeral expenses and other economic damages.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

## SIXTH COUNT
## VIOLATION OF THE NEW JERSEY CONSTITUTION

135.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

136.    At all times when the State Defendants had Decedents Tara O'Leary and Lydia Joy Perry in their care, custody, and control, the State Defendants had a "special relationship"

35

with them, which imposed upon the State Defendants an affirmative duty to care for and protect Decedents Tara O'Leary and Lydia Joy Perry pursuant to the New Jersey Constitution.

137.   By virtue of the foregoing, the State Defendants deprived Decedents Tara O'Leary and Lydia Joy Perry of various rights protected by the New Jersey State Constitution, Article 1,¶ 1, including, but not limited to:

      a)      the right to personal security and reasonably safe living conditions;

      b)      the right to protection from harm;

      c)      the right not to be harmed physically, emotionally, or otherwise;

      d)      the right to basic life necessities; and

      e)      the right to adequate medical care, treatment, and services consistent with the exercise of reasonable professional judgment.

138.   The New Jersey Constitution, Article 1,¶ 1, guaranteed Decedents Tara O'Leary and Lydia Joy Perry the Substantive Due Process right to be free from state-created dangers.

139.   As set forth above, the State Defendants, acted under the color of law and with deliberate indifference, so as to deprive Decedents Tara O'Leary and Lydia Joy Perry of their constitutional rights and privileges protected under the New Jersey Constitution.

140.   As a direct and proximate cause of the State Defendants' aforesaid acts of negligence, misconduct and omissions, Decedents Tara O'Leary and Lydia Joy Perry sustained a loss of Constitutional Rights and Privileges, including but not limited to the right to be free from harm and abuse.

141.   As a direct and proximate result of the negligence and/or misconduct of the State Defendants, Decedents Tara O'Leary and Lydia Joy Perry, suffered physical and emotional injuries, considerable pain, anguish and suffering and permanent injuries, and conscious pain and suffering, ultimately causing their death.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

## SEVENTH COUNT
## NEW JERSEY CIVIL RIGHTS ACT

142.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

143.    All of the State Defendants are subject to and required to comply with the New Jersey Civil Rights Act, N.J.S.A. 10:6-1.

144.    The State Defendants have violated Decedents Tara O'Leary's and Lydia Joy Perry's rights under both the United States Constitution and the New Jersey State Constitution and engaged in violations of the New Jersey Civil Rights Act.

145.    The State Defendants knowingly and foreseeably subjected Decedents Tara O'Leary and Lydia Joy Perry to conditions of abuse and neglect that violated their Constitutional rights, as set forth above.

146.    The unconstitutional policies, procedures, practices, acts, and omissions of the State Defendants in subjecting Decedents Tara O'Leary and Lydia Joy Perry to continued abuse and neglect by Defendant Sloan evidenced and constituted deliberate indifference to Decedents' health, safety, and other fundamental interests.  The State Defendants' unconstitutional policies, practices, procedures, acts, and omissions caused avoidable pain, mental suffering, and deterioration of Decedents'/Plaintiffs' health and placed them both at unreasonable, unnecessary, and foreseeable risk of injury.

147.    As a proximate result of the State Defendants' policies, practices, procedures, acts, and omissions, Decedents Tara O'Leary and Lydia Joy Perry suffered immediate and irreparable injury, including physical, psychological, and emotional injuries.

148.    As a further direct and proximate result of the violations engaged in by these State Defendants, Decedents sustained severe and permanent injuries, including severe mental and emotional distress, pain, suffering and anguish.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

## EIGHTH COUNT
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT, THE REHABILITATION ACT, AND THE NEW JERSEY LAW AGAINST DISCRIMINATION

### DISCRIMINATION - - - FAILURE TO REASONABLY ACCOMMODATE - - HOSTILE ENVIRONMENT

149.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

150.    At all relevant times, Decedents Tara O'Leary and Lydia Joy Perry had suffered from a disability within the meaning of the Americans with Disabilities Act ("ADA"), Section 504(a) of the Rehabilitation Act, as well as the New Jersey Law Against Discrimination. Decedents Lydia Joy Perry's and Tara O'Leary's impairment limited them in major life activities.  Both were disabled within the meaning of the ADA, the Rehabilitation Act, and the NJLAD.

151.    All Defendants, including the ARC, had improper policies and procedures regarding handling individuals with disabilities.  All Defendants failed to fulfill their obligations imposed upon them by both Federal statutes and the New Jersey Law Against Discrimination, as well as other statutory, common law and fiduciary obligations.  For example, the Federal Developmentally Disabled Act, 42 U.S.C. 15009, Section 109, expressly states that individuals with developmental disabilities are entitled to:

> "services, supports, and other assistance [which are] provided in a manner that demonstrates **respect for individual dignity**…"

152.    For purposes of important medical services, procedures, and treatment, Decedents Tara O'Leary and Lydia Joy Perry required reasonable accommodations, reasonable modifications, and other auxiliary aids and services to effectively benefit from the Defendants' services.

153.    All Defendants were required, as places of public accommodation, to accommodate Decedents Lydia Joy Perry's and Tara O'Leary's handicaps and disabilities, so as to ensure that they could effectively and meaningfully obtain the services and benefits these Defendants were required by law, (and, indeed, received federal funds to support) to provide.  Defendants failed to provide such accommodations.

154.    Again, Decedents Tara O'Leary and Lydia Joy Perry were individuals with disabilities under Title II and Title III of the ADA.  Decedents Tara O'Leary and Lydia Joy Perry met the essential eligibility requirements for the State Defendants' programs, services, and activities at all times material hereto.  Thus, Decedents Tara O'Leary and Lydia Joy Perry were qualified individuals with disabilities and was entitled to the protections of the ADA under 29 USCS Section 794, *et seq.*

155.    The Defendants violated both Title II and Title III of the ADA in numerous ways, including the discriminatory and retaliatory actions described above.  These discriminatory and

retaliatory acts and failure to reasonably accommodate her include their failure to maintain policies and procedures to ensure compliance with the ADA and their misconduct that resulted in Decedents Tara O'Leary and Lydia Joy Perry being denied services and benefits they were entitled to pursuant to Federal and State law.

156.    The Defendants' conduct was in violation of the New Jersey Law Against Discrimination, N.J.S.A.10:5-1, *et seq.*  As set forth above, Defendants discriminated against Decedents Tara O'Leary and Lydia Joy Perry on the basis of their disability.  Examples of the discriminatory conduct directed at the Plaintiffs/Decedents include, but are not limited to, the incidents recited above.

157.    Pursuant to Section 504(a) of the Rehabilitation Act:

"No otherwise qualified individual with a disability…shall, solely by reason of her disability, be excluded from the participation in, be denied the benefits of, or be subject to discrimination under any program or activity receiving Federal funds…"

158.    As set forth above, through their acts, wrongful conduct, and omissions, Defendants have violated this requirement of the Federal Rehabilitation Act.

159.    The acts alleged above constitute unlawful retaliation and practices in violation of ADA §§ 102(a), 102(b)(1) and 102(b)(5)(A) and (B), 42 U.S.C.A. §§ 12112(a), 12112(b)(1) and 12112(b)(5)(A) and (B).  All conduct alleged above occurred during a legally cognizable time period at Defendant Sloan's home and/or with respect to her interaction with the ARC.  These retaliatory practices include, but are not limited to, the Defendants' (a) refusing to accommodate Decedents' disabilities and provide them with access to medical care; (b) harassment and intimidation of the Decedents Lydia Joy Perry when she raised issues concerning "her rights" as a disabled individual; and (c) otherwise negatively altered the terms and conditions of Tara O'Leary's and Lydia Joy Perry's residency after they exercised their statutory rights under the

ADA, the LAD, and the Developmentally Disabled Act and objected to what they reasonably believed was discriminatory conduct.

160.    The demeaning conduct of the Defendants created an abusive and hostile environment/residence for Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated individuals, who were disabled, in violation of the LAD. The misconduct complained of would not have taken place but for Decedents being developmentally disabled.

161.    The discrimination and harassment was severe and sufficiently pervasive to make a disabled person believe that the conditions of her residency were altered and were hostile and offensive.

162.    As a result of the Defendants' practice/policy/custom, tolerating, ignoring, and condoning abusive and neglectful Community Care Residences, the Defendants created and acquiesced in a hostile environment, based on disabilities, in violation of the New Jersey Law Against Discrimination, N.J.S.A 10:5-1 *et. seq*.

163.    The unlawful practices complained of above were intentional and malicious, and done with intentional or reckless disregard of Decedents'/Plaintiffs' federally protected rights.

164.    As a direct and proximate result of the Defendants' actions, Decedents suffered serious permanent injuries, including physical pain, severe mental and emotional distress, pain, suffering and anguish.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

41

## NINTH COUNT
## NEGLIGENCE AS TO THE ARC

165.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

166.    The ARC Defendants had a general duty to ensure that Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated disabled individuals, received adequate care and services and was not being subjected to abuse, neglect or mistreatment.

167.    The ARC Defendants owed numerous duties to Decedents Tara O'Leary and Lydia Joy Perry.  The ARC Defendants had a duty to train their employees, agents, and representatives to ensure that any suspected abuse and neglect be recognized, reported, and investigated as legally required.  The ARC Defendants had a duty to supervise their staff, caseworkers, and outside agents and representatives to assure that they that they recognize, report and investigate any suspected abuse and neglect.  Similarly, they had a duty to report and investigate misuse of taxpayer funding designated for actual services to disabled individuals.

168.    The ARC Defendants failed to report, investigate and protect Decedents Tara O'Leary and Lydia Joy Perry and other similarly situated disabled individuals, including Erin Germaine, who were clients/participants in the ARC's Day Program, from ongoing maltreatment, abuse, neglect and torture in Defendant Sloan's home, and other Community Care Residences throughout the State.

169.    Specifically, upon information and belief, the ARC Defendants knew, were aware of, and/or should have known, of the fact that (a) Defendant Debra Sloan was and had been systematically abusing and neglecting the disabled individuals, including the Decedents Tara O'Leary and Lydia Joy Perry, who were placed in her custody and care; and (b) that the IHPS for Tara O'Leary, Lydia Joy Perry, and Erin Germaine were being systemically undermined and ignored.  Despite this actual or constructive knowledge, and despite their affirmative duty to

protect these disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry, the ARC Defendants:

(a)     aided, abetted, acquiesced in, and otherwise allowed Defendant Sloan to continue her abuse, neglect, and torture of the disabled individuals placed in her care, including Decedents Tara O'Leary and Lydia Joy Perry, and Erin Germaine;

(b)     failed to warn the family members, guardians, and other law enforcement or State Officials, of the fact that Defendant Sloan was no longer qualified and competent to take care of disabled individuals and was in the process of abusing, neglecting, and torturing same;

(c)     failed to take steps to prevent abuse, neglect, and torture and otherwise negligent and reckless behavior by Defendant Sloan against the disabled individuals placed in her care, including Decedents Tara O'Leary and Lydia Joy Perry, and Erin Germaine; and

(d)     failed to ensure, confirm, and/or monitor that the services, paid for by the State and the disabled individuals and their families, were actually being provided by both the Arc itself and the individuals operating Community Care Residences, including Defendant Sloan.  This includes significantly, Federal funds and taxpayer money which was designed and dedicated to provide certain services to Decedents Tara O'Leary and Lydia Joy Perry, and other similarly situated disabled individuals in the State Defendants' care.

170.    During the pertinent time period, in particular, the years and months leading up to the death of Decedents Tara O'Leary and Lydia Joy Perry, the ARC Defendants acted negligently and/or grossly negligently.  Said acts or omissions include but are not limited to the following:

(a)     failure to establish a protocol for reporting and documentation of instances of and allegations of neglect, abuse, and torture against disabled individuals;

(b)     failure to properly investigate allegations of neglect, abuse, and torture of disabled individuals;

(c)     failure to take appropriate measures in response to allegations of neglect, abuse and torture of disabled individuals; and

(d)     failure to notify appropriate authorities of reports and/or allegations of neglect, abuse and torture of disabled individuals.

171.    During the pertinent time period, the ARC Defendants acted negligently and engaged in the following acts and omissions:

43

a)      failure to properly protect disabled individuals placed in their supervisory custody, control, and care;

b)      failure to properly monitor the physical health, welfare, and status of the disabled individuals placed within their supervisory custody, control, and care;

c)      failure to properly supervise both the disabled individuals and the caretakers, including Defendant Sloan, who was given charge of providing proper care and services to these disabled individuals, including Decedents Tara O'Leary and Lydia Joy Perry, as well as Erin Germaine;

d)      failure to properly train employees, including training related to appropriate handling of disabled individuals, such as those like or similar to Decedents Tara O'Leary and Lydia Joy Perry, as well as Erin Germaine;

e)      failure to establish a protocol or procedure for reporting and documentation of instances of and allegations of neglect, abuse, harassment and/or torture against disabled individuals;

f)      failure to properly investigate allegations of neglect, abuse, and torture of disabled individuals;

g)      failure to take appropriate measures in response to allegations of neglect, abuse and torture of disabled individuals; and

h)      failure to notify appropriate authorities of reports and/or allegations of neglect, abuse and torture of disabled individuals.

172.    Said actions and/or omissions constituted a negligent and/or willful disregard for the safety of Decedents Tara O'Leary and Lydia Joy Perry, Erin Germaine, as well as other similarly situated disabled individuals.

173.    The ARC Defendants were aware of and/or should reasonably have been aware of the abusive and neglectful propensities and pattern of abuse and neglect engaged in by Defendant Sloan, prior to and during the ongoing torture, abuse, and neglect of Lydia Joy Perry and Tara O'Leary, and one other disabled young woman placed in Defendant Sloan's care. Despite this notice and knowledge, the State Defendants allowed Lydia Joy Perry and Tara O'Leary to remain in the custody and care of Defendant Sloan at her Community Care Residence and took

44

no other steps to protect Lydia Joy Perry and Tara O'Leary, and one other young disabled woman, Erin Germaine, from her abusive and neglectful behavior and propensities.

174.    The ARC Defendants made the situation far more dangerous for Lydia Joy Perry and Tara O'Leary and the other female disabled individual, by essentially "covering up" and willfully ignoring evidence that there was serious abuse and neglect occurring in the home of Defendant Sloan.   For example, Decedent/Plaintiff Tara O'Leary and Erin Germaine, in the Community Care Residence, were not being taken to the Day Program at the ARC on a consistent and persistent basis.   The Arc, upon information and belief, continued to accept and receive State and Federal tax payer funds, despite the fact that Decedent/Plaintiff Tara O'Leary and Erin Germaine were not showing up to receive services.   The financial incentive for the ARC and its agents, representatives, employees and managers to "remain silent" as the systematic abuse, neglect and mistreatment of all the women in Defendant Sloan's care unfolded.

175.    The ARC Defendants allowed Decedents Tara O'Leary and Lydia Joy Perry to be abused, neglected, and essentially tortured, despite the fact that they had the opportunity and duty to intervene, report and notify the State Defendants of what was going on in Defendant Sloan's home.

176.    The negligence and carelessness of the ARC Defendants included, in particular, their failure to ensure the safety of Decedents Tara O'Leary and Lydia Joy Perry, as well as Erin Germaine, and their failure to protect her from abuse, neglect, and torture.

177.    The ARC Defendants failed to ensure that Decedents Tara O'Leary and Lydia Joy Perry had their basic needs met during the time they were in their care, custody, and control.

178.    The ARC Defendants failed to ensure that Decedents Tara O'Leary and Lydia Joy Perry received reasonable and adequate medical and mental health care while in State custody, and failed to properly monitor, supervise, and evaluate Defendant Sloan as a Community Care

Residence caretaker, resulting in significant pain and suffering, injuries, emotional distress, and ultimately the death of Decedents Tara O'Leary and Lydia Joy Perry.

179.    The harm and injuries that Decedents Tara O'Leary and Lydia Joy Perry experienced were caused by the negligence of the ARC Defendants, their agents, servants, and employees, in creating the aforesaid condition, allowing the aforesaid conditions to exist, and/or failing to take reasonable steps to prevent or correct the aforesaid conditions.

180.    The negligence of Defendant Sloan, as aforesaid, is imputed to each of the named ARC Defendants by virtue of vicarious liability and the doctrine of Respondeat Superior.

181.    As a direct and proximate result of the negligence and/or misconduct of the ARC Defendants, Decedents Tara O'Leary and Lydia Joy Perry suffered permanent, severe and continuing injuries, including emotional, psychological and physical injuries, pain and suffering, and a diminished enjoyment of life.  They both died as a direct and proximate result of this abuse and neglect.

**WHEREFORE**, Plaintiffs, Eileen Devlin and Maureen Balland-Appaneal, as Co-Administratrix *ad Prosequendum* of the Estate of Tara O'Leary and Vivian Kale and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, demand judgment against the Defendants for damages, including compensatory and punitive damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

## <u>TENTH COUNT</u>
## <u>DIRECT INDEMNIFICATION CLAIM AGAINST THE STATE DEFENDANTS</u>
### <u>(As To Decedent/Plaintiff Lydia Joy Perry Only)</u>

182.    Plaintiffs repeat, reallege, and reaffirm the foregoing paragraphs of this Complaint as though fully set forth at length herein.

183.    Former Defendant, Dorothy Purdy, in her Answer to the Complaint that was originally filed on behalf of Decedent/Plaintiff Lydia Joy Perry with the United States District

Court of New Jersey (Case No.: 10-cv-4646), filed a Cross-Claim for Contribution and Indemnification against the State Defendants. (Document #9 on CM/ECF). In that Cross-claim, Dorothy Purdy asserted that she was entitled to indemnification from the State Defendants.

184. Plaintiffs entered into a settlement with Dorothy Purdy in March 2011. Plaintiffs, as part of that settlement, have been assigned any and all rights Dorothy Purdy has against the State Defendants for indemnification as it pertains to the Civil Action.

**WHEREFORE**, Plaintiffs, Vivian Kale, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry and Janet Fandel, as Co-Administratrix *ad Prosequendum* of the Estate of Lydia Joy Perry, seek judgment against the State Defendants for damages, including specifically, the balance of the settlement with Dorothy Purdy, compensatory damages, reasonable attorney fees, together with interest and costs of suit, injunctive/remedial relief, and such other relief the Court deems reasonable and just.

PATRICK J. WHALEN, ESQUIRE
Attorney for Plaintiffs

Dated: May 2, 2012

By: *s/Patrick J. Whalen*

ERIC G. KAHN, ESQUIRE
Attorney for Plaintiffs

By: *s/Eric G. Kahn*

## JURY DEMAND

The Plaintiffs hereby demand trial by jury as to all issues.

PATRICK J. WHALEN, ESQUIRE
Attorney for Plaintiffs

Dated:  May 2, 2012

By:   *s/Patrick J. Whalen*


ERIC G. KAHN, ESQUIRE
Attorney for Plaintiffs

By:   *s/Eric G. Kahn*


## DESIGNATION OF TRIAL COUNSEL

Plaintiffs hereby designate Eric G. Kahn, Esquire and Patrick J. Whalen, Esquire as trial counsel in the above-referenced matter.

PATRICK J. WHALEN, ESQUIRE
Attorney for Plaintiffs

Dated:  May 2, 2012

By:   *s/Patrick J. Whalen*


ERIC G. KAHN, ESQUIRE
Attorney for Plaintiffs

By:   *s/Eric G. Kahn*

## CERTIFICATION

I hereby certify that the matter in controversy in the within Complaint is not the subject of any other action pending in any other Court or of any arbitration proceeding.  No other action or arbitration proceeding regarding this matter is contemplated by Plaintiffs.  However, this case has been consolidated from the original actions entitled *Estate of Lydia Joy Perry v. State of New Jersey, et als*, Case No.: 10-cv-4646 filed in the United States District Court of New Jersey and *Estate of Tara O'Leary v. State of New Jersey, et als*, which was filed in the Monmouth County Superior Court, Docket No.: MON-L-4548-10.   The Honorable Douglas E. Arpert, U.S.M.J. and Honorable Anne E. Thompson, U.S.D.J. were both involved in handling and overseeing the litigation of *Estate of Lydia Joy Perry v. State of New Jersey, et als*.  Judge Arpert entered a Consent Order in the *Perry* litigation, wherein it was ordered that the two matters be dismissed and consolidated into one action and that same be filed in the United States District Court of New Jersey.  It was also anticipated that the Honorable Douglas E. Arpert, U.S.M.J. and the Honorable Anne E. Thompson, U.S.D.J. would manage this new consolidated action in light of their previous involvement in the prior litigation.

Further, a criminal action against Defendants Grimes and Sloan was initiated by the Hunterdon County Prosecutor's Office.  That case is now closed.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

PATRICK J. WHALEN, ESQUIRE
Attorney for Plaintiffs

Dated:  May 2, 2012

By:   *s/Patrick J. Whalen*

ERIC G. KAHN, ESQUIRE
Attorney for Plaintiffs

By:   *s/Eric G. Kahn*

49